IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:16-CV-235

| GREERWALKER, LLP, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | **ORDER** |
|  | ) |  |
| JACOB JACKSON, KASEY JACKSON, DERIL LEES, ROBIN LEES, DERIL LEES, JR., DEREK SANDERS and ALYSSA SANDERS, | ) ) ) ) ) |  |
|  | ) |  |
| Defendants. | ) |  |
|  | ) |  |

**THIS MATTER** is before the Court upon Plaintiff's Motion for Preliminary Injunction to Enjoin Arbitration. (Doc. No. 2). Plaintiff filed a Memorandum in Support (Doc. No. 2-1) and Defendants filed a Memorandum in Opposition. (Doc. No. 15). Plaintiff also filed a Reply. (Doc. No. 16). Oral argument was held on June 20, 2016. For the reasons set forth below, Plaintiff's Motion for Preliminary Injunction is **GRANTED**.

## I. BACKGROUND

Freedom Pharmaceuticals, Inc. ("Freedom"), an S corporation, and Plaintiff GreerWalker, LLP ("Plaintiff") signed an engagement letter ("Engagement Letter") on March 6, 2013. (Doc. No. 1 at ¶ 11). Pursuant to the Engagement Letter, Plaintiff agreed to compile Freedom's balance sheets and issue an accountants' report for Freedom's sale to a third party. (*Id.*) The Engagement Letter contained an arbitration clause with regard to any dispute between Plaintiff and Freedom relating to the engagement, the agreement, or a breach, stating:

> If the dispute is not resolved by mediation, the dispute shall be subject to binding arbitration under the Dispute Resolution Rules for Professional Accounting and Related Services Disputes of the AAA, and judgment on the award rendered by

1

> the arbitrator may be entered in any court of competent jurisdiction. The arbitration shall be heard before one or more arbitrators selected in accordance with these rules. The parties agree to conduct the arbitration in Charlotte, North Carolina, or another mutually agreed upon location. The arbitration may only award actual damages and may not award consequential, exemplary, or punitive damages. The prevailing party in any arbitration or litigation shall be entitled to recover from the other party reasonable attorney and expert witness fees, court costs, and the administrative costs, fees, and expenses of the AAA, in addition to any other relief that may be awarded.

(Doc. No. 1-1). Freedom individual shareholders Jacob Jackson, Kasey Jackson, Deril Lees, Robin Lees, Deril Lees, Jr., Derek Sanders, and Alyssa Sanders ("Defendants") were not signatories to the Engagement Letter. (Doc. No. 1 at ¶ 13).

Plaintiff performed the compilation services for Freedom, and the company and Defendants' stock were sold to the third party purchaser on April 17, 2013. (*Id.* at ¶¶ 11-14). On December 15, 2014, the Oklahoma Tax Commission assessed Defendants with taxes and penalties on the grounds that Defendants were not entitled to capital gains treatment and deductions for the sale proceeds because the closing of the sale occurred before the third anniversary of Freedom's incorporation. (*Id.* at ¶ 15).

Defendants filed two separate Demands for Arbitration with the American Arbitration Association ("AAA") on September 18, 2015. (Doc. No. 1-2, Doc. No. 1-3). Defendants alleged that Plaintiff breached the standard of care in providing tax analysis and advice to Defendants because the Engagement Letter allegedly was modified and expanded to include Defendants as Plaintiff's clients. (Doc. No. 1 at ¶¶ 18-19).

Plaintiff objected to the AAA's jurisdiction over Defendants' claims in its Answering Statement and Answer to the Demands. (*Id.* at ¶ 22). Plaintiff never agreed to arbitrate the merits of Defendants' claims before a determination had been made concerning the arbitrability of the parties' dispute. (*Id.* at ¶ 23). After a Preliminary

Hearing to determine the Arbitrator's jurisdiction and authority to arbitrate Defendants' claims, the Arbitrator issued his Order deferring resolution of the issue of arbitrability until there was a trial on the merits of Defendants' claims. (*Id.* at ¶¶ 23, 26; Doc. No. 1-4). The Order provided that the "Motion to Dismiss is denied *at this point*, but this ruling is *without prejudice* to reconsideration of the motion after a *full hearing on the claims* asserted by [Defendants], and as part of the final award." (Doc. No. 1-4 ¶ 12) (emphasis added). Plaintiff filed a Motion for Reconsideration objecting again to the Arbitrator's jurisdiction, which the Arbitrator denied. (Doc. No. 1 at ¶¶ 28-30).

Plaintiff then filed the present Complaint with this Court (Doc. No. 1), along with its Motion for Preliminary Injunction to Enjoin Arbitration. (Doc. No. 2).

## II. LEGAL STANDARD

A preliminary injunction is an "extraordinary remedy" to be granted sparingly. *UBS Fin. Serv. Inc. v. Carilion Clinic*, 880 F. Supp. 2d 724, 728 (E.D. Va. 2012) (citing *In re Microsoft Litig.*, 333 F.3d 517, 524 (4th Cir. 2003)). Preliminary injunction is an appropriate form of relief when "the plaintiffs establish that (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of the equities tips in the plaintiff's favor; and (4) an injunction is in the public interest." *Id.* (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Real Truth About Obama, Inc. v. Fed. Elec. Comm'n*, 575 F.3d 342, 346-47 (4th Cir. 2009).

## III. DISCUSSION

### 1. Jurisdiction of Arbitrability Question

Arbitration is a matter of contract and a party cannot be compelled to arbitrate a dispute it did not agree to arbitrate. *See AT&T Techs. v. Comm. Workers of Am.*, 475 U.S. 643, 648 (1986).

As a general rule, it is for the "court, and not the arbitrator, [to] decide whether the parties have agreed that an issue is or is not subject to arbitration." *Gregory v. Interstate/Johnson Lane Corp.*, 188 F.3d 501, at *4 (4th Cir. 1999). The question of whether the parties agreed to arbitrate is to be decided by the court rather than the arbitrator unless the parties "clearly and unmistakably provide otherwise." *AT&T Techs.*, 475 U.S. at 649 (internal citations omitted). The "'clear and unmistakable' standard is exacting." *Davis v. BSH Home Appliances Corp.*, 2016 WL 183482, at *3 (E.D.N.C. Jan. 14, 2016).

Defendants argue that Plaintiff and Defendants agreed to arbitrate arbitrability because Plaintiff is a signatory to the Engagement Letter which incorporates AAA Rules submitting jurisdiction to the Arbitrator. Defendants note that "[w]hen . . . parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." *Contec Corp. v. Remote Solution, Co., Ltd.*, 398 F.3d 205, 208 (2d Cir. 2005). Thus, parties who contract for arbitration in accordance with arbitration rules have authorized the arbitrator to determine questions of arbitrability. *Id.* at n.2.

It is undisputed that Plaintiff and Freedom executed the Engagement Letter which incorporated AAA Rules submitting jurisdiction questions to an arbitrator. (Doc. No. 1-1). However, Defendants in this case do not appear to be parties to the Engagement Letter. Defendants do not offer evidence of communications between themselves and Plaintiff seeking agreement to the terms of an arbitration agreement. Further, in the face of silence or ambiguity, the presumption is that the court and not the arbitrator will decide arbitrability. *Rock-Tenn Co. v. United Paperworkers Int'l Union, AFL-CIO*, 184 F.3d 330, 335 (4th Cir. 1999) (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944-45 (1995)). Thus, it appears to the court that

there is no "clear and unmistakable" indication that Plaintiff and Defendants agreed that questions of arbitrability would be decided by the arbitrator.

Defendants cite *Contec Corp.*, 298 F.3d at 205, for the proposition that even a non-signatory can enforce arbitration of the arbitrability issue where the signatory executed an agreement that incorporated AAA Rules permitting the arbitrator to decide jurisdiction. In *Contec Corp.*, a signatory of a contract brought a claim against a non-signatory, Contec Corporation. 298 F.3d at 207. Contec Corporation was a "change in corporate form" from the company that originally signed the contract, Contec L.P. *Id.* The non-signatory company treated the contract as remaining in force and the parties continued to conduct themselves as subject to the agreement regardless of the change in corporate form. *Id.* at 209. The court noted that to decide if arbitration of arbitrability was appropriate, the court must determine whether the parties have a sufficient relationship to each other and to the rights created under the agreement. *Id.* (citing *First Options*, 514 U.S. at 944-45). In order to determine the sufficiency of the relationship, the court noted that "the signatory to an arbitration agreement is estopped from avoiding arbitration with a non-signatory when the issues the non-signatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed." *Id.* However, the court never reached the issue of estoppel, instead noting there was an undisputed relationship between "each corporate form of Contec and Remote Solutions." *Id.*

In this case, there is no succession of corporate form between Freedom and Defendants. Defendants never signed the Engagement Letter, nor does the letter refer to taxation services or any service to be performed by Plaintiff other than compilation of financial statements. (Doc. No. 1-1). Unlike the parties in *Contec*, there are no facts in this case indicating a similarly

5

sufficient relationship between Plaintiff, Defendants, and the rights created under the Engagement Letter.

## 2. Equitable Estoppel and Intertwinement

Fourth Circuit precedent recognizes that "under narrow circumstances . . . a party that did not enter into a contract containing an arbitration clause may nevertheless insist that a dispute be arbitrated." *Davis Vision, Inc. v. Md. Optometric Ass'n*, 187 Fed. Appx. 299, 303 (4th Cir. 2006) (unpublished). Defendants claim that one such circumstance, equitable estoppel, is appropriate in this case because the dispute between Defendants and Plaintiff is integrally related to the Engagement Letter, although only Plaintiff is a signatory.

Equitable estoppel "precludes a party from asserting rights he otherwise would have had against another when his own conduct renders assertion of those rights contrary to equity." *Wachovia Bank, Nat. Ass'n v. Schmidt*, 445 F.3d 762, 769 (4th Cir. 2006) (citing *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 417-18 (4th Cir. 2000)). Two circumstances have been recognized by the Fourth Circuit as constituting equitable estoppel:

> First, equitable estoppel applies [w]hen the signatory to a written agreement containing an arbitration clause must "rely on the terms of the written agreement in asserting [its] claims" against the non-signatory. When each of a signatory's claims against a non-signatory "makes reference to" or "presumes the existence of" the written agreement, the signatory's claims "arise out of and relate directly to the written agreement," and arbitration is appropriate. Second, "application of equitable estoppel is warranted . . . when the signatory [to the contract containing the arbitration clause] raises allegations of . . . substantially interdependent and concerted misconduct by both the non-signatory and one or more of the signatories to the contract."

*Brantley v. Republic Mortgage Ins. Co.*, 424 F.3d 392, 395-96 (4th Cir. 2005) (quoting *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999)).

Neither circumstance applies in this case. In the first instance, Plaintiff is not asserting any claims against Defendants. In the second instance, neither Plaintiff nor Freedom have

6

asserted any allegations with regard to the Engagement Letter. Further, Defendants did not provide Plaintiff with any benefit arising under the Engagement Letter, as Freedom paid Plaintiff for its compilation services. Thus, Plaintiff is not equitably estopped from denying a contractual obligation to arbitrate with Defendants and, as non-signatories, Defendants cannot enforce the arbitration clause in the Engagement Letter against Plaintiff.

Defendants also claim that the Engagement Letter and the dispute between Defendant and Plaintiff are intertwined. However, Plaintiff correctly notes that the Engagement Letter concerns solely the agreement to compile Freedom's balance sheets. Defendants are never mentioned in the Engagement Letter, nor does the letter obligate Plaintiff to provide Freedom with tax advice. (Doc. No. 1-1). Defendants do not seek to enforce any term of the Engagement Letter against Plaintiff, and the Engagement Letter imposes no duty running from Plaintiff to Defendants. Instead, Defendants' claims are grounded on alleged new rights existing outside of the Engagement Letter and require proof of facts creating a duty and breach wholly distinct from the terms of the Engagement Letter. Thus, there is no basis for finding that Plaintiff agreed to delegate the arbitrability issue to the arbitrator.

3. **No Waiver of Judicial Determination of Arbitrability**

Defendants argue that Plaintiff, through its conduct, has waived any objection to the Arbitrator's decision on arbitrability. However, Plaintiff does not seek judicial review of the Arbitrator's decision on arbitrability. Plaintiff seeks judicial determination of arbitrability as the Arbitrator has not ruled on the arbitrability issue, but rather has deferred such a ruling until a full trial on the merits.

Further, Plaintiff's conduct did not manifest an agreement to arbitrate. Plaintiff raised its objection to jurisdiction in its Answering Statement (Doc. No. 2-15 at 2) and in its Response to

7

Claimant's Demand for Arbitration (Doc. No. 2-14 at 3). Plaintiff also expressed its intent to contest the Arbitrator's jurisdiction in agreeing to a Scheduling Order providing there would be no trial on the merits until the Arbitrator had made a determination on the jurisdictional question. (Doc. No. 2-15). Defendants cite cases where parties challenging arbitrability had waived judicial determination through conduct, but, unlike the instant case, these cited cases involve a failure to raise jurisdictional issues during arbitration. *See, e.g.*, *Rock-Tenn Co.*, 184 F.3d at 334 ("utter failure during [arbitration] proceedings to challenge the arbitrator's authority to determine the dispute, or even preserve the issue for resolution by the court."); *Cleveland Elec. Illuminating Co. v. Util. Workers Union of Am.*, 440 F.3d 809, 814 (6th Cir. 2006) ("Cleveland Electric waived the issue of who had the power to decide the arbitrability of the retirees' grievance by submitting the matter to arbitration 'without reservation.'"); *In Re Engel (Refco Inc.)*, 193 Misc.2d 91, 101 (N.Y. Sup. Ct. 2002) ("Respondents voluntarily submitted extensive arguments to the arbitrators on these issues, never once objecting to, or even questioning, their ability or authority to decide them.").

Supreme Court precedent is controlling on the issue of waiver. In *First Options of Chicago, Inc. v. Kaplan*, the Supreme Court held that "merely arguing the arbitrability issue to an arbitrator does not indicate a clear willingness to arbitrate that issue, *i.e.*, a willingness to be effectively bound by the arbitrator's decision on that point." 514 U.S. at 946. The Court noted that in the Kaplans' forceful objections to the arbitrators deciding the dispute, one would naturally think they did not want the arbitrators to have binding authority over them. *Id.* Finally, "the mere fact that the respondent [in arbitration] did not immediately file a motion in federal court to enjoin the arbitration, or refuse to participate in the arbitration, did not necessarily imply

8

that the respondent had agreed to let the arbitrators decide the issue." *Walnut Street Sec., Inc. v. Lisk*, 497 F. Supp. 2d 714, 721 (M.D.N.C. 2007) (citing *First Options*, 514 U.S. 938 at 946).

Like the Kaplans, Plaintiff twice objected to the Arbitrator's jurisdiction over the dispute. Rather than ceding authority to the Arbitrator, this reflected Plaintiff's objection to proceeding with a trial on the merits until the arbitrator ruled on his jurisdiction. Because the Arbitrator deferred resolution of the arbitrability issue until there was a full trial on the merits, Plaintiff proceeded to this court for a judicial determination of arbitrability. Plaintiff is not seeking a review of the Arbitrator's decision after going through a trial on the merits without objection, but instead is seeking judicial determination of arbitrability before a trial on the merits begins.

Defendants cite *Amway Global v. Woodward*, 744 F. Supp. 2d 657, 657 (E.D. Mich. 2010) to demonstrate that actual submission of the jurisdiction issue to an arbitrator mandates deference to the arbitrator's decision on jurisdiction. In *Amway*, the parties to the arbitration, a beauty products supplier and members of its network of Independent Business Owners ("IBOs") had both signed an arbitration agreement with a delegation clause that the court found to be valid. *Id.* at 663-64. The court also noted that by filing motions in arbitration proceedings that raised the same arbitrability challenges the IBOs sought to raise before the court, the IBOs authorized the arbitrator to rule upon jurisdictional and arbitrability disputes. *Id.* at 665.

The *Amway* court distinguished the case from *First Options*, noting that *First Options* "shows . . . that a party's mere submission of an arbitrability challenge to the arbitrator does not, by itself, demonstrate the 'requisite clear and unmistakable' intent to be bound by the arbitrator's resolution of this challenge." *Id.* at 666. The *Amway* court found that the objections in *Amway* were accompanied by a contract between the parties containing a delegation clause not present in *First Options* because "the Kaplans, as individuals, were not even parties to any contract

9

containing an arbitration clause." *Id.* Thus the *Amway* court did not view the dispute as a waiver issue, but viewed "Respondent's actions during the arbitration . . . as both an acknowledgement and an affirmative exercise of the parties' contractual right to present questions of jurisdiction and arbitrability for determination by the arbitrator." *Id.* at 665-66. The IBO's submission of jurisdictional challenges to the arbitrator did not stand alone in *Amway*, but were submitted in addition to contractual language signed by both parties that "(i) permits the parties to submit these issues to the arbitrator, and (ii) empowers the arbitrator to decide these issues." *Id.*

Thus, the instant case is factually more similar to the controlling Supreme Court precedent in *First Options* than the *Amway* case. The fact that Plaintiff participated in the arbitration proceeding and filed motions to dismiss based on lack of jurisdiction does not amount to a waiver, as "merely arguing the arbitrability issue to an arbitrator does not indicate a clear willingness to arbitrate that issue, *i.e.*, a willingness to be effectively bound by the arbitrator's decision on that point." *First Options*, 514 U.S. at 946.

4. **Preliminary Injunction is an Appropriate Remedy**

Based on the foregoing, Plaintiff has made a convincing showing that it is likely to succeed on its claim that the dispute between Plaintiff and Defendants is not arbitrable.

In addition to a likelihood of success on the merits, a plaintiff must also make a "clear showing that it is likely to be irreparably harmed absent preliminary relief" in order to obtain a preliminary injunction. *UBS Fin. Serv., Inc.*, 880 F. Supp. 2d at 733 (quoting *Real Truth About Obama, Inc.*, 575 F.3d at 347). Forcing Plaintiff to continue with an arbitration on the merits before determining the issue of arbitrability will cause Plaintiff irreparable harm because forcing a party to defend an arbitration complaint when it never agreed to do so constitutes irreparable harm *per se*. *Id.* Plaintiff would be forced to expend unrecoverable resources and would be

deprived of an opportunity for judicial determination of the claims. *See Morgan Keegan & Co., Inc. v. Louise Silverman Trust*, 2012 WL 113400, at *5 (Jan. 12, 2012). Accordingly, irreparable harm is present.

The Court next considers whether Plaintiff has demonstrated "that the balance of equities tips in his favor." *UBS Fin. Serv. Inc.*, 880 F. Supp. 2d at 734-35 (quoting *Real Truth About Obama*, 575 F.3d at 346). The balance of the equities clearly tips in Plaintiff's favor here because by granting the preliminary injunction, Defendants would suffer only a short delay in the pending arbitration. Conversely, Plaintiff would be forced to arbitrate a claim it may have never agreed to arbitrate without the procedural and evidentiary protections provided by trial, and would lose resources and the opportunity to have its day in court. *See Morgan Keegan & Co., Inc.*, 2012 WL 113400, at *5.

Finally, a preliminary injunction is in the public interest. FAA policy favors arbitration, but the Supreme Court "has never held that the presumption overrides the principle that a court may submit to arbitration 'only those disputes . . . the parties have agreed to submit.'" *Granite Rock Co. v. Int'l Broth. of Teamsters*, 561 U.S. 287, 288-89 (2010) (quoting *First Options*, 514 U.S. at 943). Further, the Court has not held that "courts may use policy considerations as substitute for party agreement." *Id.* at 289. Additionally, "forcing parties to arbitrate when they did not agree to arbitrate disincentivizes arbitration and lowers the public's confidence in arbitration as an avenue for dispute resolution." *Morgan Keegan & Co., Inc.*, 2012 WL 113400, at *6.

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Preliminary Injunction to Enjoin Arbitration (Doc. No. 2) is hereby **GRANTED**, and arbitration is hereby enjoined pending this Court's determination of the issue of arbitrability.

Signed: July 14, 2016

Graham C. Mullen
United States District Judge