**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:16-CV-235**

| | | |
|---|---|---|
| **GREERWALKER, LLP,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **ORDER** |
| | ) | |
| **JACOB JACKSON, KASEY JACKSON,** | ) | |
| **DERIL LEES, ROBIN LEES, DERIL** | ) | |
| **LEES, JR., DEREK SANDERS AND** | ) | |
| **ALYSSA SANDERS,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

This matter is before the Court upon the Plaintiff's Motion for Summary Judgment. The Defendants have responded and Plaintiff has filed a Reply. This matter is now ripe for disposition.

**BACKGROUND**

Plaintiff GreerWalker, LLP ("GreerWalker") entered into an engagement letter ("Engagement Letter") with Freedom Pharmaceuticals, Inc. ("Freedom") on March 6, 2013. (Doc. No. 1 at ¶ 11). Pursuant to the Engagement Letter, Freedom retained GreerWalker to compile Freedom's financial statements in connection with the sale of Freedom's stock to a third party, Fagron Holding USA, LLC ("Fagron"). *Id.* The Engagement Letter contained an arbitration clause with regard to any dispute between Plaintiff and Freedom relating to the engagement, the agreement, or a breach. The individual shareholders of Freedom, Jacob Jackson, Kasey Jackson, Deril Lees, Robin Lees, Deril Lees, Jr., Derek Sanders, and Alyssa Sanders ("Defendants") were not signatories to the Engagement Letter. (Doc. No. 1 at ¶ 13). In addition to GreerWalker, Freedom engaged the services of Polsinelli, P.C., a law firm, and Butcher

1

Joseph Hayes, LLC ("BJH"), an investment banking firm, to effectuate the sale of Freedom to Fagron.

GreerWalker performed the compilation services for Freedom, and the company and Defendants' stock were sold to Fagron on April 17, 2013. (*Id.* at ¶¶ 11-14). On December 15, 2014, the Oklahoma Tax Commission assessed Defendants with taxes and penalties on the grounds that Defendants were not entitled to capital gains treatment and deductions for the sale proceeds because the closing of the sale occurred before the third anniversary of Freedom's incorporation. (*Id.* at ¶ 15).

Defendants filed two separate Demands for Arbitration with the American Arbitration Association ("AAA") alleging that GreerWalker breached the standard of care in providing tax analysis and advice to Defendants. Even though they were not signatories to the Engagement Letter, they contend that it was modified and expanded to include the Defendants as Plaintiff's clients.

GreerWalker filed the present Complaint with this Court (Doc. No. 1), along with a Motion for Preliminary Injunction to Enjoin Arbitration. After a hearing, the Court granted the preliminary injunction. In its Order, the Court rejected Defendants' argument that GreerWalker should be equitably estopped from challenging arbitration, as well as Defendants' argument that Greeralker waived judicial determination of arbitrability. GreerWalker now moves for summary judgment on its request for Declaratory Judgment that there was no written arbitration agreement between GreerWalker and the Defendants, and seeks to permanently enjoin arbitration.

**DISCUSSION**

Summary judgment is appropriate when the moving party submits evidence showing "that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). Thus, summary judgment must be entered "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party . . .." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment is appropriate and trial is unnecessary if either "the facts are undisputed, or if disputed, the dispute is of no consequence to the dispositive question." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315-16 (4th Cir. 1993).

Defendants cannot rest on allegations or denials to oppose summary judgment, but instead "must provide specific facts and evidence, particularly when that party has the burden of proof of an issue," establishing that there is an issue of material fact in dispute. *Jadali v. Alamance Regional Medical Center*, 399 F. Supp.2d 675, 681 (M.D.N.C. 2005), *aff'd* 167 Fed. Appx. 961 (4th Cir. 2006). The summary judgment inquiry thus scrutinizes an opposing party's case to determine whether the party has "offered proof, in the form of admissible evidence, that could carry the burden of proof" at trial. *Mitchell*, 12 F.3d at 1316.

Under the Federal Arbitration Act, 9 U.S.C. §1, *et. seq.*, the question of "[w]hether a party agreed to arbitrate a particular dispute is a question of state law governing contract formation." *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 501 (4th Cir. 2002) (citation omitted). Because the issue presented here concerns whether GreerWalker agreed to modify the Engagement Letter through GreerWalker's alleged conduct in this state, North Carolina law governs resolution of whether a new contract was formed by modification of the Engagement Letter. *ACS Partners, LLC v. Americon Grp., Inc.*, No. 3:09cv464, 2010 WL 883663, *5

(W.D.N.C. March 5, 2010) (contracting parties are presumed to adopt the law of the place of performance as the law of the contract) (citing *Cocke v. Duke University*, 131 S.E.2d 909, 913 (N.C. 1963)).

Under North Carolina law, Defendants bear the burden of proving a modification of the Engagement Letter by clear and convincing evidence. *Lambe-Young, Inc. v. Cook*, 320 S.E.2d 699, 702 (N.C. App. 1984). Contract modifications must contain the same elements necessary for the formation of a contract to be enforceable. *Altman v. Munns*, 345 S.E.2d 419, 422 (N.C. App. 1986); *Geiger v. Central Caroline Surgical Eye Assoc., P.A.*, No. COA14-169, 2014 WL 4977657, *7 (N.C. Ct. App. Oct. 7, 2014) (unpublished). The elements necessary for the formation of a contract under North Carolina law are "an offer and acceptance." *Yeager v. Dobbins*, 114 S.E.2d 820, 823 (N.C. 1960). The offer and acceptance must involve a "meeting of the minds" on identical terms. *Wooten v. S.R. Biggs Drug Co.*, 85 S.E. 140, 142 (N.C. 1915). Moreover, "[m]utual consent is as much a requisite in effecting a contractual modification as it is in the initial creation of a contract." *Yamaha Int'l Corat v. Parks*, 325 S.E.2d 55, 58 (N.C. App. 1985).

"With regard to the first element of mutual assent, a modification must reflect 'an agreement between the parties that the terms of the contract should be altered.'" *Geiger*, 2014 WL 4977657, at *7 (quoting *G. Adrian Stanley & Assocs. v. Risk & Ins. Brokerage Corp.*, 473 S.E.2d 345, 348 (N.C. App. 1996)). "Mutual assent may be shown by an affirmative statement agreeing to modification or by 'conduct which naturally and justly leads the other party to believe the provisions of the contract have been modified or waived.'" *Id.* (quoting *Son-Shine Grading, Inc. v. ADC Constr. Co.*, 315 S.E.2d 346, 349 (N.C. App. 1984)). The formation of a contract cannot be based "'upon the impressions or understandings of one alone of the parties to

it. It is not what either thinks, but what both agree.'" *Arndt v. First Union Nat. Bank*, 613 S.E.2d 274, 278 (N.C. App. 2005) (citation omitted). Likewise, "modification of an existing contract cannot arise from an ambiguous course of dealing between the parties from which diverse inferences might reasonably be drawn as to whether the contract remained in its original form or was changed." *Ford Motor Credit Co. v. Jordan*, 168 S.E.2d 229, 233 (N.C. 1969) (internal citation omitted).

Accordingly, to establish a modification of the Engagement Letter, Defendants must present evidence that Freedom made a firm and definite offer to modify the Engagement Letter to have GreerWalker provide wholly new services (individual tax advice and analysis) to wholly different parties (Freedom's shareholders). Defendants must further offer admissible evidence sufficient to prove that GreerWalker accepted the offer to modify the contract by conduct that clearly and unambiguously demonstrated its acceptance of and agreement to the modified terms.

Defendants' principal contention is that the Engagement Letter between GreerWalker and Freedom, which contained the arbitration clause, was modified by GreerWalker's conduct to have GreerWalker provide Defendants with tax advice and analysis before closing on the sale of their Freedom stock. As explained above, to establish that the terms of the Engagement Letter were modified by GreerWalker's conduct, Defendants must prove by clear and convincing evidence (1) that there was an offer to modify the Engagement Agreement, which was sufficiently definite for a court to enforce, and (2) that the offer was accepted.

Defendants contend that Kevin Butcher, BJH's managing partner, acted as apparent agent for Freedom, and either expressly modified the Engagement Letter or did so impliedly through conduct. Although Defendants attempt to fashion an "offer" by cobbling together various emails sent by Butcher to John Norman, GreerWalker's senior partner, none of those emails, whether

considered individually or collectively, contains a firm and definite offer to modify the Engagement Letter. Defendants cite "team emails and phone calls relating to tax advice" but none of this evidence demonstrates communications indicating that Butcher offered and GreerWalker agreed to perform a tax analysis for the individual shareholders of Freedom. At most, the evidence merely demonstrates that at certain times Butcher asked Norman specific, tax-related questions, which at times Norman answered.

Defendants also cannot provide clear and convincing evidence that GreerWalker accepted an offer or otherwise agreed to a proposed modification of the Engagement Letter. There are no emails or other documents memorializing communications asking GreerWalker to perform a tax analysis of the Freedom transaction for Freedom's shareholders, let alone any communications indicating that GreerWalker agreed to perform such an analysis. Most importantly, there is no evidence that GreerWalker actually performed services consistent with the alleged contract modification. In other words, there is no evidence that Norman or anyone from GreerWalker ever analyzed the tax consequences of the Freedom transaction for the purpose of advising Freedom's shareholders before the Closing. Defendants concede GreerWalker never agreed orally or in writing to provide that service. Thus, Defendants must prove GreerWalker's affirmation by performance. Yet Defendants cannot point to any performance by GreerWalker, such as drafts of an analysis; work papers containing an analysis; request for information to the shareholders regarding their taxes; and research of Oklahoma tax laws. Not only is there no evidence that GreerWalker performed any analysis, but the evidence is unrebutted that Freedom's shareholders never asked to see a tax analysis or report from GreerWalker before the Closing. It is a basic tenet of contract law that before a party's performance can evidence "acceptance" of an offer, there must be performance consistent with the offer. *MacEachern v.*

6

*Rockwell Int'l Corp.*, 254 S.E.2d 263, 265-66 (N.C. App. 1979). Accordingly, the undisputed

fact that GreerWalker did not perform a tax analysis of the transaction for Freedom's

shareholders establishes that GreerWalker did not accept any "offer" to amend the Engagement

Letter to provide Defendants with tax advice and analysis related to the Freedom stock sale. *See*

*id.* at 266 (by failing to provide the service requested, defendant failed to make an effective

acceptance of the offer).

GreerWalker charged Freedom $16,000 for accrual accounting and tax work performed

before the Closing, and an additional $50,000 to be paid out of closing.  Defendants cite this

additional billing and payment as evidence that GreerWalker took on an expanded role beyond

compiling financial statements in connection with the sale of Freedom.  However, Joe Jackson,

former Chief Operating Officer of Freedom, conceded that the $50,000 was a retainer for the

future work to be performed to prepare the company's and the shareholders' tax returns after

Closing.

Defendants' affirmative defenses likewise do not provide a basis for compelling

arbitration. This Court has already rejected Defendants' estoppel theory in its Order granting the

Motion for Preliminary Injunction.  Moreover, Defendants' apparent agency theory is legally

flawed because the doctrine is used solely to estop a principal from denying the agency of

another who the principal, by words or conduct, has led a third-party to believe was the

principal's agent. *See Brewster v. Verbal*, No. COA13-1344, 2014 WL 2937042, * 4 (N.C. Ct.

App. July 1, 2014) (unpublished) (under the doctrine of apparent authority, "'[t]he *principal may*

*be estopped* to deny that a person is his agent or that his agent has acted within the scope of his

authority.'") (emphasis added) (quoting *Research Corp. v. Hardware, Inc.*, 140 S.E.2d 416, 419

(N.C. 1965)).  The doctrine has no application in this case because GreerWalker is not asserting

agency by estoppel. It did not rely on Freedom's conduct and in fact expressly denies that Freedom ever purported to represent that Butcher was its agent.

Equally flawed is Defendants' third-party beneficiary theory. Notwithstanding that there is no evidence any Defendant received any service from GreerWalker before the closing, at most, what Defendants argue is that they were incidental beneficiaries of GreerWalker's services to Freedom under the Engagement Letter. The third-party beneficiary doctrine, however, does not give incidental beneficiaries standing to sue under a contract. *Vogel v. Reed Supply Co.*, 177 S.E.2d 273, 278 (N.C. 1970).

The evidence shows that Polsinelli, Butcher, and GreerWalker were a team of professionals working together to effectuate the sale of Freedom. It is evident that someone dropped the ball with regard to tax advice to the individual shareholders. What is not evident is that GreerWalker is the responsible party.

IT IS THEREFORE ORDERED that Plaintiff's Motion for Summary Judgment is hereby GRANTED; and Defendants are hereby enjoined from arbitrating their malpractice claims against GreerWalker.

Signed: March 14, 2017

Graham C. Mullen
United States District Judge

8